BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

EVANGELISTA WORLEY, LLC
JAMES M. EVANGELISTA (GA #707807)
DAVID J. WORLEY (GA #7766650
KRISTI STAHNKE MCGREGOR (GA #674012)
LESLIE G. TORAN (GA #141637)
500 Sugar Mill Road, Suite 245A
Atlanta, GA 30350
Tel: 404/205-8400
404/205-8395 (fax)
jim@ewlawllc.com
david@ewlawllc.com
kristi@ewlawllc.com
leslie@ewlawllc.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA –OAKLAND DIVISION**

| | |
|---|---|
| CRISTIAN KELLY and KENNETH THALL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COINBASE GLOBAL, INC.; COINBASE, INC.,<br><br>Defendants. | Case No. 4:21-cv-06010<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND**<br><br>**CLASS ACTION**<br><br>District Judge Jon S. Tigar<br>Courtroom 6, 2nd Floor<br><br>Complaint Filed: August 3, 2021<br>Trial Date: Not Set Yet<br><br>**JURY TRIAL DEMANDED** |

*BLOOD HURST & O' REARDON, LLP*

00182879

Plaintiff Thomas Ayoob files this First Amended Class Action Complaint against Coinbase Global, Inc. and Coinbase, Inc. (collectively, "Coinbase") for damages, injunctive relief, and other equitable relief. Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all other matters, by and through the investigation of undersigned counsel.

## INTRODUCTION

1. This class action is on behalf of all Coinbase "wallet" and account holders who have had their "wallets" or accounts frozen by Coinbase, or otherwise have been prevented from using their funds because of Coinbase's actions and inaction.

2. Coinbase is the largest cryptocurrency exchange in the United States. According to Coinbase, it has "built [its] reputation on the premise that [its] platform offers customers a secure way to purchase, store, and transact in crypto assets." In its words, what "sets [Coinbase] apart" from competitors is its "customer technology[,] [which is] built to deal with the real-time, global, and 24/7/365 nature of the crypto asset markets." Contrary to its entire premise, Coinbase improperly and unreasonably locks out its consumers from accessing their accounts and funds, either for extended periods of time or permanently. Because of the extreme volatility of cryptocurrencies' value – with freefalls of 40% within 24 hours not unheard of – the inability to access an account to sell, buy, or trade cryptocurrency leads to severe financial loss. Making matters worse, Coinbase fails to timely respond to customer pleas for support and help, and also fails to preserve and safeguard customer funds as it promises. Coinbase's failures have prevented Plaintiff and Class Members from having "full control of your crypto" and from being able to "invest, spend, save, earn, and use," or withdraw their funds as Coinbase promises.

3. As a result of Coinbase's conduct, Plaintiff and Class Members have been damaged through the loss of their wallet and account access, the funds and investments in those accounts and, among other things, their investment opportunities. Accordingly, Plaintiff seeks damages and equitable relief on behalf of himself and those similarly situated.

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

**THE PARTIES**

4.      Plaintiff Thomas Ayoob is a resident of the State of California. Relying on Coinbase's representations about access to and control over his funds and cryptocurrency, Plaintiff Ayoob opened an account and a wallet with Coinbase through which he deposited funds and traded cryptocurrency. Consistent with Coinbase's representations, Plaintiff Ayoob had a reasonable expectation that he would be able to access his account and wallet whenever he wanted. Plaintiff Ayoob, however, was locked out of his account, had buy, sell, trade, and withdraw features frozen. His demands that Coinbase unfreeze his account have gone unheeded, and his requests for support from Coinbase have been unresolved. Had Plaintiff Ayoob known that Coinbase would unreasonably lock him out of or otherwise freeze his account, Plaintiff would not have used Coinbase's service. As a result of Defendants' acts and inaction, Plaintiff Ayoob has suffered injury in fact and lost money or property. Plaintiff Ayoob desires to continue to maintain his account and wallet with Defendants, provided the misconduct is corrected. Nevertheless, unless and until Defendants correct their misconduct, Plaintiff Ayoob will be subjected to Defendants' ongoing conduct complained of in this Complaint

5.      Defendant Coinbase Global, Inc. is a publicly-traded Delaware company that is involved in the business of cryptocurrency exchange, among other interrelated businesses. Although Defendant Coinbase Global operates worldwide on a virtual platform and claims not to have a formal physical headquarters since it is a "remote first" company, Defendant in fact currently maintains its executive offices in San Francisco, California, and maintained such offices at times relevant to this litigation.

6.      Defendant Coinbase, Inc., a California company, is a wholly owned subsidiary of Coinbase Global, Inc. Defendant Coinbase also currently maintains its executive offices in San Francisco, California, and maintained such offices at times relevant to this litigation.

**JURISDICTION AND VENUE**

7.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount-in-controversy, exclusive of costs and interests, exceeds the sum of $5,000,000.00, in the aggregate, as there are well over 100 members of the Classes that

BLOOD HURST & O' REARDON, LLP

00182879

are known to exist, and this is a class action in which a Plaintiff is from a different State than the Defendant.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Defendants reside in this district, their principal executive office is located here, a substantial part of the events or omissions giving rise to the claims occurred here and/or a substantial part of property that is the subject of the action is situated here.

9.     Assignment is proper to the San Francisco Division of the Northern District of California under Civil L.R. 3-2(c) and (d) because a substantial part of the events or omissions that gave rise to Plaintiff's claims occurred in San Francisco County.

## FACTUAL ALLEGATIONS

### Background

10.     Coinbase is an online exchange platform for cryptocurrency transactions. It boasts over 56 million users, in over 100 countries, with $335 billion of cryptocurrency traded quarterly. As of March 31, 2021, Coinbase held $223 billion in custodial fiat currencies and cryptocurrencies on behalf of its customers.

11.     Coinbase holds itself out as providing the primary financial account for the crypto economy – a safe, trusted, and easy-to-use platform to invest, store, spend, earn, and use crypto assets. For example, Coinbase states it is "the easiest place to buy and sell cryptocurrency" and is "The most trusted cryptocurrency platform."[1] Likewise, Coinbase represents on its website—as the reason to use its hosted wallet service—that customers are able to be "in full control of your crypto" and that its hosted wallet "is the easiest solution" for users to "buy, sell, send and receive crypto."[2] It also represents that it offers "a more fair, accessible, efficient, and transparent financial system enabled by crypto."[3] Coinbase claims on its website that, as part of its "Security for Your Peace of Mind," it undertakes "careful measures to ensure that [Coinbase users'] bitcoin is as safe

---

[1]     https://www.coinbase.com/
[2]     https://www.coinbase.com/learn/tips-and-tutorials/how-to-set-up-a-crypto-wallet
[3]     https://www.coinbase.com/about

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

as possible" and that "98% of customer funds are stored offline."[4] Coinbase further claims that it follows "industry best practices" regarding account security.[5]

12.     Plaintiff and the other members of the Class reasonably believed that Coinbase would provide the safe, secure, and easy-to-access platform it promised.

13.     Plaintiff, like the other Class Members he seeks to represent, has established a wallet (account) hosted by Coinbase that purportedly enables him to conduct transactions in cryptocurrency 24 hours a day, 7 days a week and 365 days a year. Each Coinbase customer's account and wallet reflects those transactions and permits access to their cash, crypto assets (e.g., cryptocurrencies) and other investment funds. Accordingly, Plaintiff, and each wallet or account holder are entitled to, reasonably expect, and must have access to their wallets at all times.

14.     Coinbase combines the balances of customers' "wallets" and holds such funds in FDIC insured bank accounts and/or purportedly invests them in liquid investments, the interest and earnings from which Coinbase keeps. *See* Coinbase User Agreement, Part 1: General Use, Sec. 2. (Wallet and Custodial Services) and 2.7 (USD Wallet).

15.     Coinbase operates an online internet trading platform where its account holder customers can buy, sell, spend, and trade cryptocurrency, such as Bitcoin, Ethereum, and Litecoin. Coinbase's platform also facilitates access to account holders' cryptocurrencies and funds through a digital "wallet," including customer proceeds for the purchase, and from the sale, of cryptocurrencies.

16.     Coinbase represents to its customers that it is a fully compliant, regulated entity, registered as a Money Services Business with FinCEN, the United States Department of the Treasury's Financial Crimes Enforcement Network.

17.     Coinbase earns the vast majority of its income, approximately $1.5 billion for the quarter ending March 31, 2021, through fees generated primarily from its United States individual customers' retail trade transactions in cryptocurrency. It also earns money on funds held in customer accounts through its deposits and investments.

---

[4]     https://www.coinbase.com/security
[5]     https://www.coinbase.com/

BLOOD HURST & O' REARDON, LLP

00182879

18.     Coinbase recognizes its responsibilities, risks, and liabilities it undertakes holding its customers valuable financial assets. For example, Coinbase made the following statement in its Supplement No. 1 to its April 1, 2021, prospectus filed with the Securities and Exchange Commission:

> The Company has committed to securely store all crypto assets it holds on behalf of users. As such, the Company may be liable to its users for losses arising from theft or loss of user private keys. The Company has no reason to believe it will incur any expense associated with such potential liability because (i) it has no known or historical experience of claims to use as a basis of measurement, (ii) it accounts for and continually verifies the amount of crypto assets within its control, and (iii) it has established security around custodial private keys to minimize the risk of theft or loss. Since the risk of loss is remote, the Company had not recorded a liability at March 31, 2021 or December 31, 2020.

19.     Coinbase also made the following statement in its Supplement No.1: "Our business involves the collection, storage, processing, and transmission of confidential information, customer, employee, service provider, and other personal data, as well as information required to access customer assets. We have built our reputation on the premise that our platform offers customers a secure way to purchase, store, and transact in crypto assets."

20.     Coinbase represents that its security measures "will provide absolute security or prevent breaches and attacks," and "we have developed systems and processes designed to protect the data we manage, prevent data loss and other security breaches, effectively respond to known and potential risks, and expect to continue to expend significant resources to bolster these protections…."

21.     Coinbase has experienced tremendous recent growth. For example, the company grew from 199 employees as of December 31, 2017, to 1,717 employees as of March 31, 2021, approximately 40% of which work in engineering, product and design teams. Its net income grew from a loss of $30.4 million in 2019 to positive net income of $322.3 million in 2020. Its number of monthly transacting users—retail users who make at least one transaction during a given 28-day period—grew from approximately one million per month at the end of 2019 to approximately six million per month one year later, at the end of 2020, a 600% increase. Its total number of verified

BLOOD HURST & O' REARDON, LLP

00182879

uses grew similarly—from a total of approximately 13 million users in September 2017 to approximately 56 million in March 2021.

22.    Coinbase users, such as Plaintiff and Class Members, are presented a "User Agreement" when they create their account and wallet with Coinbase.[6] Although that User Agreement contains an arbitration provision, there are a number of conditions precedent that must be met before Coinbase customers and Defendants agree to arbitrate: Defendants require customers to first use its "support team." If the customer and Defendants fail to resolve the dispute in that manner, then customers must utilize Defendants' "Formal Complaint Process." If that fails, *only then* can customers attempt to resolve disputes through arbitration. But Coinbase systemically fails to follow those pre-arbitration dispute resolution mechanisms as set forth in the User Agreement, thereby rendering the provision void as to Plaintiff and Class Members.

23.    Coinbase knew, or should have known, that when presenting Plaintiff and Class Members with its User Agreement, Coinbase did not have adequate staffing or adequate policies, practices and procedures in place to follow its mandated pre-arbitration dispute resolution procedures incorporated into, and a pre-requisite for, the Arbitration provision in the User Agreement. Indeed, Coinbase has even disclosed that its "phone agents" do not take support calls. Accordingly, Coinbase misrepresented its ability to comply with its own arbitration procedures, fraudulently induced Plaintiff and Class Members to accept the User Agreement with the Arbitration provision, breached their duties under the Arbitration provision, and rendered Plaintiff's and Class Members' acceptance of it a mistake of fact, if not rendering the Arbitration provision *void ab initio.*

**Plaintiff's Coinbase Account**

24.    Plaintiff opened his account with Coinbase in or about August 2020. After opening his account, Plaintiff at various times purchased Bitcoin and Ethereum ("ETH"), and ultimately converted all of his crypto holdings to ETH. As of September 17, 2021, Plaintiff's Coinbase account reflected holdings of approximately 3.19 ETH at the then market price for ETH of

---

[6]    *See* https://www.coinbase.com/legal/user_agreement/united_states

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT

00182879

$3,537.19 Accordingly, Plaintiff's Coinbase account had a total value of approximately $11,283.64.

25.    On March 15, 2021, Plaintiff purchased $4,000 in ETH using his Coinbase account.

26.    That same day, to his surprise, Plaintiff was notified by Defendants by email that his account had been closed due to "prohibited use," which has not been explained to Plaintiff and which Plaintiff denies. Defendants' email contained the following:

> Upon careful review, we believe your account has engaged in prohibited use in violation of our Terms of Service and we regret to inform you that we can no longer provide you with access to our service. We respectfully request that you follow the on-screen instructions presented when you sign in to your Coinbase account to send any remaining balance offside to an external address.
> …
> Should you have any questions or need assistance, please let us know and we'll be happy to help.
>
> Respectfully,
> Coinbase Customer Support

27.    Minutes later, Plaintiff, in an abundance of caution, reset his password and then withdrew his cash holdings of approximately $3,500. Plaintiff, however, was unable to sell, convert his ETH holdings, and unable to withdraw the cash value equivalent from his Coinbase account.

28.    On March 18, 2021, Plaintiff reached out to Coinbase Customer Support via email to inquire into why Coinbase was closing his account. Plaintiff was provided an automated response informing him of his case support number, that his case had been transferred to a "specialist," and that he would be contacted directly as soon as his case had been reviewed. Coinbase further noted that reviews "are typically completed within 5-7 business days but may take longer."

29.    Since then, Plaintiff has been prompted with an "account closure" message when he logs in, leaving him unable to sell, convert, or transfer, or withdraw his ETH holdings.

30.    In addition to contacting Coinbase through its Customer Support webpage on March 18, 2021, Plaintiff has attempted to resolve his issues with Coinbase using its "Formal Complaint Process." Plaintiff has contacted Coinbase using this method and through its Customer Support on approximately twenty occasions, and as recently as September 1, 2021.

BLOOD HURST & O' REARDON, LLP

00182879

31.     As of September 17, 2021, Plaintiff is still prompted with the "account closure" message when he logs into his account. Despite complying with instructions in automated messages from Coinbase to verify his identify, Plaintiff still cannot sell, convert, transfer, or withdraw his ETH holdings.

32.     As a result, Plaintiff and Class Members have been damaged by the lack of access to their accounts, loss of funds, loss of cryptocurrency assets, deprived of the use of their funds and accounts preventing them from engaging in any authorized transactions including but not limited to, investing, spending, saving, earning, using, selling or withdrawing their cryptocurrencies, and related injuries.

33.     Defendants' actions have irreparably harmed Plaintiff and Class Members.

## CLASS ALLEGATIONS

34.     This action is brought and may properly proceed as a class action pursuant to the provisions of Federal Rule of Civil Procedure 23.

35.     Plaintiff seeks certification of a Class which is composed of and defined as follows:

> All Coinbase account holders who maintained funds or cryptocurrency in a Coinbase account, and who were unable to access the funds or cryptocurrency for three days or longer.

36.     Excluded from the Class are Defendants' officers and directors, current or former employees, as well as their immediate family members, as well as any judge, justice, or judicial officer presiding over this matter and members of their immediate families and judicial staff.

37.     The members of the Class for whose benefit this action is brought are so numerous that joinder of all members is impracticable.

38.     There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals. These common questions include, but are not limited to:

    a.      Whether Defendants owed duties to Plaintiff and the Class, the scope of those duties, and whether Defendants breached those duties;

    b.      Whether Defendants' conduct was unfair or unlawful;

    c.      Whether Defendants engaged in deceptive conduct;

BLOOD HURST & O' REARDON, LLP

00182879

BLOOD HURST & O' REARDON, LLP

d.   Whether Defendants have converted the funds belonging to Plaintiff and the
     Class;

e.   Whether Defendants have been unjustly enriched as a result of their conduct
     of locking out Plaintiff and the Class from their Coinbase accounts;

f.   Whether Plaintiff and the Class are entitled to damages as a result of
     Defendants' wrongful conduct; and

g.   Whether injunctive relief is appropriate.

39.   Plaintiff's claims are typical of the claims of the members of the Class which he seeks to represent. All such claims arise out of the same policies, practices, procedures and other actions by Defendants, and the same or similar documents used by Defendants in their dealings with Plaintiff and Class Members.

40.   Plaintiff has no interests antagonistic to those of the Class.

41.   The Class, of which Plaintiff is a member, is readily identifiable.

42.   Plaintiff will fairly and adequately protect the interests of the Class and have retained competent counsel experienced in the prosecution of consumer litigation. Class Counsel has investigated and identified potential claims in the action. Class Counsel has extensive experience in handling class actions, other complex litigation, and claims of consumers.

43.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Class are significant, the amount is modest compared to the expense and burden of individual litigation.

44.   The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.

45.   The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Defendants in this action, or the prosecution of separate actions by individual members of the Class would create the risk that adjudications with respect to individual members of the Class would as a practical matter be dispositive of the interests of the other members not

FIRST AMENDED CLASS ACTION COMPLAINT

parties to the adjudications, or substantially impair or impede their ability to protect their interests. Prosecution as a class action will eliminate the possibility of repetitious litigation.

46.     Defendants have acted, or refused to act, on grounds generally applicable to Plaintiff and Class Members, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

47.     A class action will cause an orderly and expeditious administration of the claims of the Class, and will foster economies of time, effort and expense.

48.     Plaintiff does not anticipate any difficulty in the management of this litigation.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

#### (Breach of Fiduciary Duty)

45.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

46.     As custodian of their funds and cryptocurrency assets, and acting as agent transacting on their behalf when they wish to buy, sell or convert crypto assets on the Coinbase platform, Coinbase has a fiduciary relationship with Plaintiff and Class Members, and must exercise the fiduciary duties it therefore owes with the utmost good faith, integrity, and in the best interest of Plaintiff and Class Members.

47.     As discussed herein, Coinbase represents and agrees that it will act as the custodian of all funds and digital currency assets it holds in its customer accounts, that Coinbase will securely store these funds and cryptocurrency assets, that Coinbase will hold these funds and cryptocurrency assets for the benefit of Plaintiff and Class Members, that Coinbase will allow Plaintiff and Class Members to control, access and withdraw their funds and cryptocurrency assets at any time, and that Coinbase will not sell, transfer, loan, hypothecate, or otherwise alienate customer cryptocurrency assets except as instructed by the customer.

48.     As the custodian of their valuable assets, Plaintiff and Class Members entrust Coinbase to ensure the safekeeping of their assets and to provide them with access to and control over their accounts and the assets within those accounts when they want.

BLOOD HURST & O' REARDON, LLP

00182879

49.     Defendants owe a fiduciary duty to Plaintiff and Class Members to provide them with immediate access to their accounts, the funds and cryptocurrency assets within those accounts, and to process only the respective customer's transactions within those accounts.

50.     Defendants owe a fiduciary duty to Plaintiff and Class Members to protect their accounts, their transactions relating to those accounts, and their funds and cryptocurrency assets within those accounts.

51.     Defendants owe a fiduciary duty to Plaintiff and Class Members to timely respond to and resolve their complaints regarding security threats, hacking, and technological issues that preclude Plaintiff's and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

52.     Defendants owe a fiduciary duty to timely notify Plaintiff and Class Members of any security threats, hacking, and technological issues that preclude Plaintiff's and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

53.     Defendants breached their fiduciary duty owed to Plaintiff and Class Members to provide them with immediate access to their accounts, the funds and cryptocurrency assets within those accounts, and to process only the respective customer's transactions within those accounts.

54.     Defendants breached their fiduciary duty owed to Plaintiff and Class Members to protect their accounts, their transactions relating to those accounts, and their funds and cryptocurrency assets within those accounts.

55.     Defendants breached their fiduciary duty owed to Plaintiff and Class Members to timely respond to and resolve their complaints regarding security threats, hacking, and technological issues that preclude Plaintiff's and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

56.     Defendants breached their fiduciary duty owed to timely notify Plaintiff and Class Members of any security threats, hacking, and technological issues that preclude Plaintiff's and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT

00182879

57.     Defendants breached their fiduciary duties owed to Plaintiff and Class Members by, among other things, actively preventing Plaintiff and Class Members from accessing their accounts, accessing the funds and cryptocurrency assets within those accounts, processing transactions within Plaintiff's and Class Members' accounts when not initiated by Plaintiff and Class Members, locking Plaintiff and Class Members out of their accounts, and/or refusing to return Plaintiff's and Class Members' funds to Plaintiff and Class Members.

58.     Defendants also breached their fiduciary duties owed to Plaintiff and Class Members by failing to act with utmost good faith and in the best interests of Plaintiff and Class Members by, among other things, ignoring or failing to timely respond to and resolve Plaintiff's and Class Members' repeated complaints and other communications demanding access to their Coinbase accounts.

59.     As a direct and proximate result of Defendants' breach of their fiduciary duties, Plaintiff and Class Members have been damaged in an amount to be proven at trial, including nominal damages.

60.     In addition to actual or consequential damages, Plaintiff and Class Members are entitled to pre-judgment interest, attorney's fees and costs, along with any relief that this Court deems just and proper.

## SECOND CAUSE OF ACTION

### (Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing)

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     Plaintiff and Class Members each entered into a written contract, the User Agreement, with Defendants upon their registration for a Coinbase account. Plaintiff and Class Members were presented with the User Agreement on a take-it-or-leave it basis and had no opportunity to negotiate any of the specific terms or provisions thereunder.

63.     Every contract, including the User Agreement, contains an implied duty of good faith and fair dealing. Defendants entered into and are bound by the User Agreements with

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

Plaintiff and Class Members, which are valid and enforceable contracts that contain an implied duty of good faith and fair dealing.

64.     Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by, among other things, failing to discharge their obligations and provide the services they promised in exchange for the transaction fees they charged Plaintiff and Class Members for each transaction in their account and for the monies they earned on the funds within Plaintiff's and Class Members' accounts.

65.     Specifically, Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to enable Plaintiff and Class Members to have immediate access to their accounts, the funds and cryptocurrency assets within those accounts, and to process only the respective customer's transactions within those accounts.

66.     Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to protect Plaintiff's and Class Members' accounts, their transactions relating to those accounts, and their funds and cryptocurrency assets within those accounts.

67.     Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to timely respond to and resolve Plaintiff's and Class Members' complaints regarding security threats, hacking, and technological issues that precluded Plaintiff and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

68.     Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to timely notify Plaintiff and Class Members of any security threats, hacking, and technological issues that prevent Plaintiff's and Class Members' access to their accounts, account transactions and account funds and cryptocurrency assets.

69.     Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to meet their obligation of good faith and fair dealing to timely and properly resolve Plaintiff's and Class Members' complaints about their inability to access their accounts, account transactions and account funds and cryptocurrency assets.

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

70. Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to meet their obligation to ensure that Plaintiff and Class Members could access their accounts, account transactions and account funds and cryptocurrency assets.

71. Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to return Plaintiff's and Class Members' account funds and cryptocurrency assets.

72. Defendants breached the User Agreement and the implied covenant of good faith and fair dealing by failing to follow their own pre-requisites to require arbitration.

73. As a result of Defendants' breach of their contractual duties, obligations and/or promises arising under the User Agreement and the implied covenant of good faith and fair dealing, Plaintiff and Class Members were damaged by, including but not limited to, their payment of transaction fees, the loss of use of their accounts, the inability to access the funds and cryptocurrency assets in their accounts and the loss of value of those assets, all in an amount to be proven at trial.

74. In addition to Plaintiff's and Class Members' actual contract damages, Plaintiff and Class Members seek recovery of their attorney's fees, costs to the extent provided by the User Agreement and pre-judgment interest.

## THIRD CAUSE OF ACTION

### (Unjust Enrichment)

75. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

76. Plaintiff and Class Members conferred a benefit upon Defendants by depositing their currency funds and cryptocurrency assets into their accounts maintained by Defendants and maintained such assets in those accounts, which enabled Defendants to profit from the investment and trading of such assets.

77. Plaintiff and Class Members conferred a benefit upon Defendants by paying fees to Defendants in order to conduct transactions in their accounts, maintain their accounts and have access to those accounts.

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

78.     As a result of Defendants' actions and omissions alleged herein, Defendants have been unjustly enriched at the expense of Plaintiff and Class Members. Under principles of equity and good conscience, Defendants should not be permitted to retain the transaction fees paid by Plaintiff and Class Members or the assets held within Plaintiff's and Class Members' accounts.

79.     Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all fee revenue, income, profits, and other benefits obtained by Defendants at the expense of Plaintiff and Class Members resulting from Defendants' actions and/or omissions alleged herein, all in an amount to be proven at trial. Plaintiff and Class Members also are entitled to attorney's fees, costs and prejudgment interest, along with any relief that this Court deems just and proper.

80.     Plaintiff and the Class have no adequate remedy at law.

## FOURTH CAUSE OF ACTION

### (Conversion)

81.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

82.     Defendants have asserted, and improperly maintain, dominion and control over Plaintiff's and Class Members' accounts, account funds and cryptocurrency assets by preventing Plaintiff and Class Members to access their accounts and take possession of their account funds and cryptocurrency assets.

83.     Defendants have allowed Plaintiff's and Class Members' funds and cryptocurrency assets to be depleted and Defendants have benefited thereby by improperly retaining such funds and cryptocurrency assets or by transaction fees paid by others that have taken Plaintiff's and Class Members' funds and cryptocurrency assets without their authorization.

84.     Plaintiff and Class Members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all fee revenue, income, profits, and other benefits obtained by Defendants at the expense of Plaintiff and Class Members resulting from Defendants' actions and/or omissions alleged herein, all in an amount to be proven at trial. Plaintiff and Class

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

Members also are entitled to attorney's fees, costs and prejudgment interest, along with any relief that this Court deems just and proper.

## FIFTH CAUSE OF ACTION

### (Violation of the California Unfair Competition Law)

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     Defendants' User Agreement provides that "the laws of the State of California, without regard to principles of conflict of laws, will govern this Agreement and any claim or dispute that has arisen or may arise between you and Coinbase, except to the extent governed by federal law."

87.     Plaintiff, on behalf of himself and the Class, bring this cause of action for violations of the "unlawful" and "unfair" prongs of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. ("UCL").

88.     Plaintiff and Defendants are "persons" within the meaning of the UCL. Bus. & Prof. Code § 17201.

89.     The UCL prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

90.     Section 17204 allows "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition" to prosecute a civil action for violation of the UCL.

91.     As a result of Defendants' actions and omissions as alleged herein, Defendants have violated the UCL's proscription against engaging in "unlawful" conduct by, by virtue of their conduct, which constitutes a breach of their fiduciary duties to Plaintiff and Class Members, wrongful retention of Plaintiff's and Class Members' accounts, account funds and cryptocurrency assets, breach of contract, unjust enrichment, conversion, and violation of the California Consumers Legal Remedies Act.

92.     Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

BLOOD HURST & O' REARDON, LLP

00182879

93.     Defendants' acts and practices as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL. In the course of conducting business, Defendants have violated the UCL's proscription against unfair business practices by, among other things: (1) improperly and unreasonably preventing Plaintiff and Class Members from accessing their accounts and funds, either for extended periods of time or permanently; (2) failing to timely respond to requests for support; (3) failing to preserve and safeguard customer funds as represented; and (4) not compensating Plaintiff and Class Members for Defendants' wrongdoing and their losses.

94.     Defendants' unfair business conduct is substantially injurious to consumers, offends legislatively-declared public policy as announced by the violations of the laws alleged, and is immoral, unethical, oppressive, and unscrupulous. The gravity of Defendants' wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Defendants' legitimate business interests other than engaging in the above-described wrongful conduct.

95.     As a result of these actions and inaction, including preventing Plaintiff and Class Members from accessing their accounts, account funds and cryptocurrency assets, Defendants are able to unfairly compete with other comparable companies in violation of Business and Professions Code sections 17000, *et seq*. and 17200, *et seq*. Due to these unlawful, unfair, and/or fraudulent business practices, Defendants have gained a competitive advantage over other comparable companies.

96.     The UCL also prohibits any "fraudulent business act or practice." In the course of conducting business, Defendants committed "fraudulent business act[s] or practices" by among other things, failing to disclose to Plaintiff and other members of the Class that it would improperly and unreasonably restrict access to their wallets and accounts, and thereby prevent Plaintiff and other members of the Class from trading, withdrawing, or otherwise accessing their funds and cryptocurrency. These misrepresentations and omissions are contrary to what Coinbase represents is the entire supposed premise of its business – a safe, trusted, and easy-to-use platform to invest, store, spend, earn, and use crypto assets.

97.     Plaintiff, in fact, has been deceived as a result of his reliance of Defendants' material representations and omissions, which are described above.

98.     The victims of Defendants' unlawful, unfair, and/or fraudulent business practices include, but are not limited to, Plaintiff and Class Members, competing cryptocurrency exchange platforms providing similar services as Defendants, and the general public. Plaintiff is informed and believes, and based thereon alleges, that Defendants performed the alleged acts with the intent of gaining an unfair competitive advantage and thereby injuring Plaintiff and Class Members, other competitors, and the general public.

99.     Plaintiff's success in this action will enforce important rights affecting the public interest and public policy. In this regard, Plaintiff sues on behalf of himself and the public.

100.    Business and Professions Code section 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition. Injunctive relief is necessary and appropriate to prevent Defendants from repeating their unlawful, unfair, and fraudulent business acts and business practices alleged.

101.    Business and Professions Code section 17203 provides that the Court may restore to any person in interest, any money or property that may have been acquired by means of such unfair competition.

102.    Plaintiff and Class Members have suffered injury in fact and have lost money and property as a result of Defendants' unfair conduct. Plaintiff and Class Members are entitled to restitution pursuant to Business and Professions Code section 17203 for their account funds and cryptocurrency assets deposited into their Coinbase accounts that have been unlawfully withheld, the losses incurred as a result of Plaintiff and Class Members being unable to trade in their accounts, and the fair value of other losses alleged herein, during the four-year period prior to the filing of this complaint. All remedies are cumulative pursuant to Business and Professions Code section 17205.

BLOOD HURST & O' REARDON, LLP

00182879

103.    Plaintiff and Class Members request injunctive relief pursuant to Business and Professions Code section 17203 to enjoin Defendants from continuing the unfair/unlawful business practices alleged herein.

104.    Plaintiff, on behalf of the general public, also seeks a public injunction in accordance with the McGill Rule (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)), requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices.

105.    Plaintiff herein takes upon enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action. The action is seeking to vindicate a public right, and it would be against the interests of justice to penalize Plaintiff by forcing Plaintiff to pay attorneys' fees from the recovery in this action. Attorneys' fees are appropriate including pursuant to Code of Civil Procedure section 1021.5.

## SIXTH CAUSE OF ACTION

### (Violations of the Consumers Legal Remedies Act)

106.    Plaintiff incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

107.    Defendants' User Agreement provides that "the laws of the State of California, without regard to principles of conflict of laws, will govern this Agreement and any claim or dispute that has arisen or may arise between you and Coinbase, except to the extent governed by federal law."

108.    Defendants' acts and omissions as alleged herein were intended to deceive Plaintiff and Class Members, and have resulted in harm to Plaintiff and Class Members.

109.    Defendants' actions as alleged herein violated, and continue to violate, California Civil Code section 1750, *et seq.* also known as the Consumers Legal Remedies Act ("CLRA") including section 1770(a)(5) for making representations that their services have characteristics, uses, or benefits which they do not, section 1770(a)(7) for making representations that their services are of a particular quality, which they are not, and section 1770(a)(9) for advertising services with intent not to sell them as advertised.

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879

110.    Pursuant to California Civil Code section 1782, attached herein as "**Exhibit A**" is a true and correct copy of Plaintiff's Notice of Violation of the California Consumer Legal Remedies Act (California Civil Code section 1750 *et seq*.) sent to Defendants on September 24, 2021. Once the time period set forth in California Civil Code section 1782(a) have expired after providing Notice and Demand to Defendant, Plaintiff will amend this cause of action to seek recovery of damages pursuant to California Civil Code section 1782(d).

111.    Defendants' actions and omissions occurred in the County of San Francisco and Defendants maintains its principal place of business in the County of San Francisco. This action is brought in the California Northern District Court which presides over matters in the County of San Francisco. Attached hereto as "**Exhibit B**" is an affidavit setting forth facts showing this district is the proper place for trial pursuant to California Civil Code section 1780(d).

112.    Plaintiff, on behalf of the general public, seeks a public injunction in accordance with the McGill Rule (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017)), requiring Defendants to immediately cease such acts of unlawful business practices.

113.    Pursuant to California Civil Code section 1780(a), Plaintiff and Class Members also are entitled to an order enjoining Defendants' wrongful acts alleged herein, an order awarding the payment of costs and attorneys' fees pursuant to California Civil Code section 1780(e), and for such other relief that this Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### (Declaratory Relief)

114.    Plaintiff incorporates by reference and reallege each and every allegation contained above, as though fully set forth herein.

115.    Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*., this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

BLOOD HURST & O' REARDON, LLP

FIRST AMENDED CLASS ACTION COMPLAINT

00182879

116.    Plaintiff and Class Members allege that Defendants misrepresented the access that Plaintiff and Class Members would have to their Coinbase accounts and the funds and cryptocurrency assets in those accounts.

117.    Plaintiff and Class Members allege that Defendants misrepresented the security of Plaintiff's and Class Members' Coinbase accounts and the funds and cryptocurrency assets in those accounts.

118.    Plaintiff and Class Members allege that Defendants misrepresented their ability to timely comply with their own pre-requisites for the arbitration provision stated in the User Agreement, rendering Plaintiff's and Class Members' acceptance of such provision a mistake of fact such that no meeting of the minds occurred regarding such provision between Plaintiff and Class members, on the one hand, and Defendants, on the other. Moreover, in light of Defendants' misrepresentation of its ability to comply with its own arbitration prerequisites, whether negligent or intentional, renders the arbitration provision void *ab initio*.

119.    Further, it is fundamentally unfair to Plaintiff and Class Members, and breach of the Defendants' duty of good faith and fair dealing, to hold Plaintiff and Class Members to the requirements of the arbitration provision in the User Agreement when Defendants cannot comply with their own prerequisites to the implementation of arbitration.

120.    Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

   a.    Defendants immediately shall provide Plaintiff and Class Members with access to their accounts and account transaction information;

   b.    Defendants immediately shall provide Plaintiff and Class Members with access to their funds and cryptocurrency assets in their accounts;

   c.    Defendants immediately shall return to Plaintiff and Class Members all funds and cryptocurrency assets in their accounts prior to being locked out of those accounts;

   d.    Defendants immediately shall return to Plaintiff and Class Members all funds and cryptocurrency assets wrongfully taken from their accounts;

BLOOD HURST & O' REARDON, LLP

00182879

e.   Defendants immediately shall return to Plaintiff and Class Members all fees paid in connection with their transactions since the time they opened their respective Coinbase accounts; and

f.   The arbitration provision is null and void, *ab initio*; Defendants are not entitled to dismissal of this action on the basis of the arbitration provision, and Plaintiff and Class members are entitled to pursue their claims in this Court.

121.   This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security, security and technology resolution, and customer complaint resolution, policies, procedures, protocols and the ability to timely comply with same, consistent with law and industry standards.

122.   If an injunction is not issued, Plaintiff and Class Members will suffer irreparable injury, and lack an adequate legal remedy.

123.   The hardship to Plaintiff and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued.

124.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public, as well as eliminate the additional injuries that would result to Plaintiff and Class Members.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and all others similarly situated, respectfully prays for relief as follows:

a.   An order certifying the Class for declaratory and injunctive relief and for money damages under Federal Rules of Civil Procedure Rule 23 and California Civil Code section 1781(a), appointing Plaintiff as Class Representative, and appointing his attorneys as Class Counsel;

b.   A judgment for actual damages;

c.   A judgment for compensatory damages;

d.   A judgment for disgorgement of transaction fees, income and other profits;

BLOOD HURST & O' REARDON, LLP

00182879

e.   A declaratory judgment that Defendants violated the UCL and CLRA;

f.   A judgment for injunctive relief enjoining Defendants from engaging in future unlawful activities complained of herein, including violations of the UCL and CLRA;

g.   A public injunction under the McGill Rule (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017));

h.   An order that Defendants shall engage in corrective actions so that customer accounts, funds and cryptocurrency assets can be secured, accessed and transacted;

i.   An accounting of all amounts that Defendants unjustly received, retained, and/or collected as a result of their unlawful acts and omissions;

j.   A judgment for exemplary and punitive damages for Defendants' knowing, willful, and/or intentional conduct;

k.   Pre-judgment and post-judgment interest;

l.   A judgment for reasonable attorney fees and costs of this suit, pursuant to contract, the UCL, California Civil Code Section 1780(e), California Civil Code section 1021.5, and any other applicable statute; and

m.   A judgment for all such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Dated: September 24, 2021

BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)

By:        *s/  Timothy G. Blood*
TIMOTHY G. BLOOD

501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com

23

FIRST AMENDED CLASS ACTION COMPLAINT

jdavis@bholaw.com

EVANGELISTA WORLEY, LLC
JAMES M. EVANGELISTA (GA #707807)
DAVID J. WORLEY (GA #7766650
KRISTI STAHNKE MCGREGOR (GA #674012)
LESLIE G. TORAN (GA #141637)
500 Sugar Mill Road, Suite 245A
Atlanta, GA  30350
Tel: 404/205-8400
404/205-8395 (fax)
jim@ewlawllc.com
david@ewlawllc.com
kristi@ewlawllc.com
leslie@ewlawllc.com

*Attorneys for Plaintiff*

BLOOD HURST & O' REARDON, LLP

24

FIRST AMENDED CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on September 24, 2021.

*s/  Timothy G. Blood*
TIMOTHY G. BLOOD

BLOOD HURST & O'REARDON, LLP
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com

FIRST AMENDED CLASS ACTION COMPLAINT

BLOOD HURST & O' REARDON, LLP

00182879